# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81076-CIV-SMITH

KENNETH JOHANSEN, *individually and on
behalf of those similarly situated*,

    Plaintiff,

v.

BLUEGREEN VACATIONS
UNLIMITED, INC.,

    Defendant.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

This matter is before the Court on Plaintiff's Motion for Class Certification [DE 35] (the "Motion"), Defendant's Response in Opposition [DE 36], and Plaintiff's Reply [DE 42]. For the reasons that follow, Plaintiff's Motion is denied.

**I. BACKGROUND**

Plaintiff, Kenneth Johansen, has brought a one-count class action complaint [DE 74] against Defendant, Bluegreen Vacations Unlimited, Inc., alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, when Schumer Management and Consulting ("Schumer"), a vendor hired by Defendant, initiated telemarketing calls to residential telephone numbers, despite the fact that the residential telephone numbers were registered on the National Do Not Call Registry.

Plaintiff appears to have an extensive history with filing lawsuits alleging violations of the TCPA. (*See* Pl. Dep. [DE 40-1] at 140:16-21, 157:10-17 (estimating that, prior to 2020, Plaintiff had filed sixty (60) TCPA lawsuits and estimating that, since 2014, Plaintiff has made on average

$60,000 per year from TCPA lawsuits).) Plaintiff admits that "[i]t is his typical practice to pose as a customer when [he] receive[s] an illegal telemarketing call." (*Id.* at 163:1-10.)

According to the Second Amended Complaint, Schumer, on Defendant's behalf, placed at least nine telemarketing calls to Plaintiff. (Sec. Am. Compl. ¶ 32.) On May 26, 2020, Plaintiff received the first telemarketing call initiated on behalf of Defendant. (*Id.* ¶ 33.) Plaintiff answered the phone and said, "hello"; however, Plaintiff did not hear an audible response, and the line disconnected after approximately thirty seconds. (*Id.*) On May 27, 2020, Plaintiff received a second telemarking call, initiated on behalf of Defendant. (*Id.* ¶¶ 34, 35; *see also* Transcript of May 27, 2020 Call [DE 23-1].) Plaintiff claims that he listened to and engaged with the telemarketing representative, intending to conclusively identify the entity responsible for illegally contacting him. (*Id.* ¶¶ 35, 44, 48.) During the May 27, 2020 call, the representative began the conversation by telling Plaintiff that she was calling on behalf of Defendant about a vacation package that Plaintiff had previously purchased in 2010. (*See* Transcript of May 27, 2020 Call [DE 23-1] at 2:5-15.) Plaintiff continued the conversation and proceeded to pose as Defendant's customer. (Pl. Dep. [DE 40-1] at 163:11-14.) During the May 27, 2020 telephone call, Plaintiff actively engaged with the telemarketing representative for approximately thirty minutes — verifying his personal information, requesting additional information on available products and services, and knowingly verifying false contact information. (*See* Transcript of May 27, 2020 Call [DE 23-1] at 3:6, 4:16, 6:25, 7:20, 9:13-15, 9:23-24, 14:14.) Plaintiff also voluntarily provided the representative with an additional email address and requested that the representative send him additional information about the vacation package. (Transcript of May 27, 2020 Call [DE 23-1] at 9:13-10:3.) Plaintiff admits that he confirmed the false contact information that the representative had on file so that the representative would prolong and continue the call. (Dep. Johansen [DE 40-1] at 150:21-151:1.) Plaintiff admits that his "typical practice" includes

2

"confirming whatever information a telemarketer has on [him], whether accurate or not." (*Id.* at 163:16-25.)

Plaintiff claims that, after May 27, 2020, he received an additional seven telemarketing calls, initiated on behalf of Defendant. (Sec. Am. Compl. ¶ 32.) The final telemarketing call occurred on June 2, 2020. (*See id.* ¶ 38; *see also* Transcript of June 2, 2020 Call [DE 23-2].) During the June 2, 2020 call, the representative began the conversation by telling Plaintiff that she was calling on behalf of Defendant about a vacation package that Plaintiff had previously purchased in 2010. (*See id.* at 2:4-15.) Plaintiff again continued the conversation and proceeded to pose as Defendant's customer, representing that he was interested in Defendant's services. (Pl. Dep. [DE 40-1] at 163:11-14.) The representative attempted to end the conversation shortly after it began; however, Plaintiff requested more information about the vacation package, intending to continue the conversation. (*See* DE 23-2 2:19-22; Pl. Dep. [DE 40-1] at 92:5-14.) During the June 2, 2020 telephone call, Plaintiff actively engaged with the representative for approximately twenty-five minutes — verifying personal information, requesting additional information about vacation destinations, adding his spouse to the account, and knowingly verifying false contact information. (*See* Transcript of June 2, 2020 Call [DE 23-1] at 2:22, 4:10-22, 5:8-6:2, 11:9-17, 11:18-12:11.) The June 2, 2020 telephone conversation concluded with Plaintiff notifying the representative that he had registered his telephone number on the Do Not Call Registry and notifying the representative of his desire to no longer receive telemarking calls. (*Id.* at 19:5 – 23:5.)

Plaintiff readily admits that his conduct during the May 27, 2020 and June 2, 2020 telephone conversations was deceptive. (Pl. Johansen [DE 40-1] at 171:11-14.) Plaintiff intentionally prolonged and continued the telephone conversations by posing as Defendant's customer, interested in a vacation package. (*See id.* at 99:4-100: 25.) Plaintiff also admits that he believes deception is appropriate behavior for a class representative. (*Id.* at 172:1-5.)

3

Plaintiff has filed his Motion seeking to certify a nationwide class, defined as:

> All persons within the United States who (a) from October 1, 2018 through July 8, 2020; (b) received more than one outbound call from Schumer for Bluegreen within a 12 month period prior to making any inbound class; (c) to their residential telephone numbers registered with the National Do Not Call Registry; and (d) whose phone numbers were obtained by Bluegreen either (1) prior to 2013, at the time of a purported vacation, vacation purchase, or contemplated vacation purchase, or (2) as a referral from someone else.[1]

(Mot. Cert. Class.) Using records obtained from Defendant, Plaintiff's expert, Aaron Woolfson, claims to have identified 19,772 telephone numbers that received a total of 280,444 connected telephone calls and purportedly qualify under Plaintiff's putative class. (*See* Rep. Woolfson [DE 35-9] at 9:27-101.)

In opposition to class certification, Defendant raises several arguments, including arguments relating to (a) standing, (b) commonality/typicality, (c) adequacy, (d) predominance, and (e) constitutional violations. With respect to predominance, Defendant argues that issues involving standing, consent, and established business relationships persist and consequently defeat predominance.

## II. LEGAL STANDARDS

### A. The Telephone Consumer Protection Act

---

[1] Excluded from the proposed class are all persons who made one or more inbound call(s) to Schumer for Bluegreen before receiving at least two outbound calls from Schumer for Bluegreen. Also excluded from the proposed class are: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Bluegreen, its subsidiaries, parents, successors, predecessors, and any entity in which Bluegreen or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors, or assigns of any such excluded persons; and (6) persons whose claims against Bluegreen have been fully and finally adjudicated and/or released. (Mot. Cert. Class.)

4

Congress passed the TCPA to balance "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade." Tel. Consumer Prot. Act of 1991, Pub. L. No. 102-243, § 2(9) (1991). The TCPA authorizes the Federal Communications Commission ("FCC") to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "The FCC promulgated regulations creating a national do-not-call list and requiring telemarketers to maintain their own internal do-not-call lists." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019). The National Do Not Call Registry is maintained by the federal government, and the regulations implemented by the FCC prohibit telemarketers from initiating any telephone solicitations to a residential telephone subscriber who has registered his or her telephone number on the Registry. *See* 47 C.F.R. § 64.1200(c)(2).

The TCPA creates a private right of action for anyone who receives more than one call within 12 months from the same entity, in violation of the law. 47 U.S.C. § 227(c)(5). A plaintiff may bring an action to enjoin a violation of the TCPA or to recover actual damages or statutory damages of $500 per violation. *Id.* Treble damages may be available if the violations were committed willfully or knowingly. *Id.* The term "telephone solicitation" means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person"; however, the term does not include "a call or message [] to any person with that person's prior express invitation or permission [or] to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4). The term "established business relationship" means "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business . . . on the basis of an inquiry, application, purchase or transaction by the business . . . regarding products or services offered by such person or entity, which relationship has not been previously terminated

5

by either party." 47 U.S.C. § 227(a)(2) (citing 47 C.F.R. § 64.1200(f)(6)). "[U]nder federal common-law principals of agency, there is vicarious liability for TCPA violations." *Cordoba*, 942 F.3d at 1265 (quoting *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 674 (2016)).

**B.      Class Certification**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011). "The district court has broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). "For a class to be certified, the named plaintiff must have standing and the putative class must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) and the requirements found in one of the subsections of Rule 23(b)." *Cordoba*, 942 F.3d at 1267. "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). In examining whether the party seeking certification has satisfied the requirements of Rule 23, the Eleventh Circuit has counseled that "while a court should not determine the merits of a claim at the class certification state, it is appropriate to 'consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'" *Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1337 (11th Cir. 2006). However, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 564 U.S. at 349. Under Rule 23(a), the party seeking class certification has the burden of showing: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

6

claims or defenses of the representative parties are typical of claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "These four prerequisites of Rule 23(a) are commonly referred to as 'numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims.'" *Valley Drug*, 350 F.3d at 1188. In addition to establishing the elements of Rule 23(a), the class must also satisfy one of the three additional requirements of Rule 23(b). Where a plaintiff seeks to certify a class under Rule 26(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. DISCUSSION

Upon review, the Court finds that Plaintiff has failed to adequately satisfy the Rule 23(a) typicality and adequacy prerequisites. Having found that the typicality and adequacy prerequisites have not been satisfied, the Court need not, and will not, address the issues raised concerning predominance.

#### A. Typicality

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega*, 564 F.3d at 1275. There is a sufficient nexus if the class representative's claim and the potential class members' claims arise from the same event, pattern, or practice and are based on the same theories. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

7

Plaintiff contends that typicality is satisfied because his claims arise from Defendant's practice of contacting individuals whose residential telephone numbers are registered on the National Do Not Call Registry. Plaintiff argues that his claims are typical of those of the putative class members' because their claims arose from Defendant's pattern or practice of using Schumer to place telemarketing calls. The Court disagrees.

Plaintiff's claim differs from those of putative class members' claims. The record clearly demonstrates the deceptive and dishonest tactics employed by Plaintiff to establish his claim. Thus, Plaintiff's claim is inherently different that those of the putative class members who presumably did not use similarly deceitful methods. Plaintiff's conduct necessitates additional inquires with respect to both standing, consent, and damages. For example, a plaintiff is conferred Article III standing when three requirements are met: (1) the plaintiff must have suffered an injury-in-fact that is "concrete and particularized" and "actual or imminent"; (2) that injury must be "fairly traceable to the challenged action of the defendant"; and (3) it must be "likely . . . that the injury will be redressed by a favorable decision." *Cordoba*, 942 F.3d at 1268 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)).

In the Order Denying Defendant's Motion to Dismiss, this Court ruled that Plaintiff had sufficiently alleged that he suffered an injury-in-fact after having received two unwanted telephone calls — the first on May 26, 2020 and the second on May 27, 2020. (*See* DE 70 at 5.) The Court limited its ruling on injury-in-fact to the first two telephone calls, in part, because of Plaintiff's representation in his First Amended Complaint that he only sought a claim based on the May 26, 2020 and May 27, 2020 calls. (*See* First. Am. Compl. [DE 15] ¶ 36.) Plaintiff removed that representation from his Second Amended Complaint, indicating that he now intends to seek damages for each of the nine alleged calls, not just the first two. (*See generally,* Sec. Am. Compl.)

8

The Court has not yet issued a ruling on whether Plaintiff has standing to proceed with his claim as to the other seven calls. Moreover, the injury suffered by a plaintiff must be "fairly traceable to the challenged action of the defendant." *Cordoba*, 942 F.3d at 1268. The Court must still decide whether the injury allegedly caused by each telephone call is fairly traceable to unlawful action by the Defendant or, instead, is a result of Plaintiff's deceptive conduct — inducing the telemarketing representative to believe that Plaintiff was a customer of Defendant, genuinely interested in the available products and services, and expressly requesting that the representative provide him with additional information. Defendant has already raised this argument in its pending Motion for Summary Judgment [DE 73]. Thus, Plaintiff has failed to satisfy the typicality prerequisite.

**B.   Adequacy**

The "adequacy of representation analysis encompasses two separate inquires: (1) whether any substantial conflicts of interests exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug*, 350 F.3d at 1189. "A plaintiff's lack of credibility and the impurity of his motives can render him an 'inadequate' class representative." *In re Scientific-Atlantic, Inc. Secs. Litig.,* 571 F. Supp. 2d 1315, 1333 (N.D. Ga. 2007) (quoting *Dublin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)). The Court may consider the credibility, honesty, and trustworthiness of a proposed class representative for purposes of assessing the proposed representative's adequacy under Rule 23, provided that any concerns regarding the proposed representative's adequacy are relevant to the litigation. *See Turner v. Office Depot,* No. 2:18-cv-779-ALB-SRW, 2019 U.S. Dist. LEXIS 237534, at *7-8 (M.D. Ala. Oct. 25, 2019) (collecting cases); *see also Koppel v. 4987 Corp.*, 191 F.R.D. 360, 368 (S.D.N.Y. 2000) (citing *German v. Federal Home Loan Mortgage Corp.*, 168 F.R.D. 145, 153 (S.D.N.Y. 1996)). The honesty of a class representative matters because a representative "is a

9

fiduciary and . . . the interests of the class are 'dependent on his diligence, wisdom[,] and integrity.'" *Koppel,* 191 F.R.D. at 368 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549-50 (1949).

Defendant argues that Plaintiff is an inadequate representative because of his deceptive conduct. The Court agrees. Plaintiff readily admits that his conduct during the May 27, 2020 and June 2, 2020 telephone conversations was deceptive. (Pl. Dep. [DE 40-1] 171:11-14.) Plaintiff has what appears to be an extensive and profitable history with lawsuits involving TCPA claims. Plaintiff acknowledges that he has developed a "typical practice" of deceitful conduct used to succeed in prosecuting TCPA claims. Plaintiff poses as a customer of the entity responsible for initiating the telemarketing call and induces the representative into believing that he is, in fact, an established customer and genuinely interested in the product or service offer, thereby prolonging the purported injury that Plaintiff claims to have suffered and increasing the potential damages that he could, in theory, recover.

Moreover, Defendant has highlighted an opinion issued in one of Plaintiff's prior TCPA lawsuits. In *Johansen v. Nat'l Gas & Elc. LLC*, No. 2:17-cv-587, 2017 U.S. Dist. LEXIS 138785 (S.D. Ohio Aug. 16, 2018), a district court granted summary judgment against Plaintiff and dismissed his suit entirely based on Plaintiff's response to an order to show cause. The district court had ordered Plaintiff to show cause as to why his complaint should not be dismissed as meritless because of statements made by Plaintiff and his legal counsel, indicating that the lawsuit was "based on a ruse." *Johansen v. Nat'l Gas & Elc. LLC,* No. 2:17-cv-587, 2017 U.S. Dist. LEXIS 208878, at *8 (S.D. Ohio Dec. 20, 2017). According to the district court's opinion, National Gas & Electric ("NG&E") called Plaintiff on June 13, 2017 but the line was disconnected. *Johansen*, 2017 U.S. Dist. LEXIS 208878, at *8-9. Plaintiff then initiated a call back to NG&E, posing as an interested customer, and actually completed the process to enroll as a customer with

NG&E. *Id.* at *8-9. Plaintiff "'had no intention of becoming an NG&E customer' but played along 'as he typically does.'" *Id.* at *9. Similar to the present action, Plaintiff posed as an interested customer and deliberately provided false information and induced NG&E into believing that Plaintiff was legitimately interested in becoming a customer *Id.* at *9-10. In the days that followed, Plaintiff received additional telephone calls initiated on behalf of NG&E and then Plaintiff brought suit against NG&E based on those subsequent telephone calls. The district court expressly noted that, Plaintiff's admissions "cast serious doubts on his fitness to serve as an adequate class representative." *Id.* at *10.

Most concerning, during his deposition in the present lawsuit, Plaintiff admits that he believes that engaging in deception is appropriate behavior for a class representative. (Pl. Dep. [DE 40-1] 172:1-5.) Based on the foregoing, the Court has serious concerns about the Plaintiff's credibility, honesty, trustworthiness, and motives in bringing forth this putative class action. Thus, the Court finds that the Plaintiff is an inadequate class representative. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Class Certification [DE 35] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 30th day of September, 2021

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:   Counsel of record

11