UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH JOHANSEN,<br><br>                    Plaintiff,<br><br>       v.<br><br>EFINANCIAL LLC,<br><br>                    Defendant. | CASE NO. 2:20-cv-01351-DGE<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable Brian A. Tsuchida, United States Magistrate Judge (Dkt. No. 39) and Plaintiff Kenneth Johansen's objections to the R&R.  (Dkt. No. 40.)

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On September 11, 2020, Plaintiff filed, on behalf of himself and all others similarly situated, a complaint alleging that Defendant Efinanical LLC ("Efinancial") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq* and its implementing regulation, 47 C.F.R. § 64.1200(c), by placing telephone calls to him and the putative class

members whose telephone numbers are on the National Do-Not-Call ("DNC") Registry. (Dkt. No. 1 at 1-8.)

On December 4, 2020, Judge Tsuchida issued an order limiting discovery initially to Plaintiff's individual claims as the most efficient and cost effective way of avoiding fees and costs associated with burdensome class discovery if Plaintiff's claims did not succeed. (Dkt. No. 21.) As such, Plaintiff's claim consists of two telephone calls Efinanical made to Plaintiff in April 2020, only one of which, the call made on April 7, 2020, could potentially subject Efinancial to liability under the TCPA. (Dkt. No. 39 at 1-2.)

On April 16, 2021, Defendant filed a motion for summary judgment seeking dismissal of these claims. (Dkt. No. 24.) On June 11, 2021, Judge Tsuchida issued the instant R&R, recommending that the Court grant Defendant's motion for summary judgment. (Dkt. No. 39.)

Plaintiff objected to the R&R. (Dkt. No. 40.) Plaintiff contends that Judge Tsuchida erred by concluding: (1) that Plaintiff consented to Defendant's call; (2) that Defendant had a reasonable basis to call Plaintiff; and (3) that Defendant was entitled to protection under the TCPA's safe harbor provision. (*Id*.) Defendant responded to Plaintiff's objections. (Dkt. No. 41.)

**A. Basis for Defendant Contacting Plaintiff.**

On April 6, 2020, Efinancial received a request through its website for an insurance quote purportedly sent by Plaintiff. (Dkt. No. 25 at 4.) To submit a request for a life insurance quote on this website, the user must enter his or her first name, last name, gender, date of birth, zip code, phone number, and email address, and must also consent to be called and otherwise contacted by Efinancial. (*Id.* at 5.) Efinancial's website also automatically populates several fields in their online form for every customer who submits a life insurance request, including

height, weight, tobacco use, term, and coverage; these fields are later adjusted by the Efinancial representative who speaks to the customer. (*Id.*) The person who submitted the request purporting to be Plaintiff consented to receive autodialed calls, prerecorded calls, emails, SMS messages, and MMS messages. (*Id.*)

After receiving this request, Efinancial placed two telephone calls to Plaintiff on April 6, 2020 and April 7, 2020. (*Id.* at 6.) Plaintiff did not answer when Efinancial called him on April 6th. (*Id.*) On April 7th, Plaintiff answered and spoke to two Efinancial representatives. (*Id.*)

### B. Plaintiff's Participation in Phone Call.

Plaintiff spoke with Efinancial's representatives for approximately 26 minutes, initially stating that he was concerned about covering expenses, "taking care of everything", and interested in $50,000 of life insurance coverage. (Dkt. Nos. 25 at 6; 28-1 at 4-5.) During the call, Efinancial's representative asked Plaintiff a series of detailed questions about his criminal and medical history. (Dkt. No. 28-1 at 5-7.) Plaintiff answered all these questions, provided very specific and detailed health information, did not object to this line of questioning and did not contend that Efinancial did not have his consent to call him. (*Id.*; Dkt. No. 39 at 10-11.)

When Efinancial's representative asked for Plaintiff's driver's license number, Plaintiff began asking questions about her name, her telephone number, and the insurance company offering the quote, Fidelity Life. (Dkt. No. 28-1 at 8-10.) Plaintiff asked whether Efinancial's representative had heard of a company called Accuquote, told her that he was "concerned about the phone call" because his "number is on the do not call list", denied that he provided Efinancial consent to call him and questioned Efinancial's representative concerning how the company acquired his information. (*Id.*) At the end of the call, Efinancial's representative placed Plaintiff

on the company's Do Not Call list, and has not called Plaintiff since for purposes of providing a life insurance quote. (Dkt. Nos. 25 at 6; 28-1 at 10.)

### C. Defendant's DNC Compliance Procedures.

Defendant has submitted declarations from employees and training materials in support of its contention that it complies with the provisions of the TCPA and qualifies for protection under its safe harbor provision. (Dkt. Nos. 25-1 at 2-4; 25-4 at 2-27; 26 at 1-3; 27 at 1-4; 39 at 21-23.)

## II. STANDARD OF REVIEW

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, rev'd on other grounds, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

While it is sufficient for the Plaintiff to establish that there is a genuine dispute concerning a material fact, once the moving party has carried its burden under Federal Rule of Civil Procedure 56 by establishing that there is no such dispute, the party opposing the motion

1  "must do more than simply show that there is some metaphysical doubt as to the material facts."

2  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

3        The opposing party cannot rest solely on her pleadings but must produce significant,

4  probative evidence in the form of affidavits, and/or admissible discovery material that would

5  allow a reasonable jury to find in her favor.  *Id.* at n.11; *Anderson v. Liberty Lobby, Inc*., 477

6  U.S. 242, 249-50 (1986).  The nonmoving party "must produce at least some 'significant

7  probative evidence tending to support the complaint.'" *(Id.); see also California Architectural

8  Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987) ("No

9  longer can it be argued that any disagreement about a material issue of fact precludes the use of

10 summary judgment.").

### III.   DISCUSSION

12       Passed by Congress in response to consumer complaints about abuses of telephone

13 technology by telemarketers, the TCPA creates a cause of action for a person who receives more

14 than one telephone call within a 12-month period in violation of the corresponding regulation.

15 *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371-72 (2012); 47 U.S.C. § 227(c).  The

16 regulation prohibits telephone solicitations to residential telephone subscribers who have

17 registered their phone numbers on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2).

18       **A. A Reasonable Jury Would Find The Call Was Consented To and That Efinancial Had a Basis to Call Plaintiff.**

20       Even if a telephone subscriber has registered his telephone number on the DNC, the

21 caller will not be subject to liability if it first obtained "the subscriber's prior express invitation

22 or permission" that is "evidenced by a signed, written agreement between the consumer and

23 seller which states that the consumer agrees to be contacted by this seller and includes the

24 telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii).  "The plain

language of the TCPA shows that 'express consent' and 'express invitation or permission' are interchangeable." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 621 (3d Cir. 2020).

The FCC has determined that the "signed, written agreement" requirement may be fulfilled by submission of a website form. *See* Rules & Regulations Implementing the TCPA of 1991, C.G. Dkt. No. 02-278, Report and Order, 27 FCC Rcd 1830, 1844 (2012). Applying this guidance, courts have found that a person can provide prior express permission by submitting a web form with personal information when the web form includes a notice that the person agrees to be contacted. *Morris v. Modernize, Inc.*, No. AU-17-CA-00963-SS, 2018 WL 7076744, at *6-8 (W.D. Tex. Sept. 27, 2018).

Here, Efinancial produced credible evidence supporting the conclusion the call was consented to and that Efinancial had a reasonable basis to call Plaintiff. First, the undisputed evidence established that Efinancial received Plaintiff's name and telephone number from a submission on Efinancial's website, and that the notice on this website, which is directly below the button used to submit information, clearly states that by submitting information to request a life insurance quote, the person "consent[s] to receive offers of insurance from Efinancial, LLC at the . . . telephone numbers you provided . . ." (Dkt. Nos. 25 at 5; 39 at 14.) The submission received by Efinancial includes data indicating consent to be called, emailed, and to receive SMS and MMS messages was provided. (*Id.*)

Second, it is undisputed that Plaintiff actively provided information necessary to obtain an insurance quote. An Efinancial representative initiated the call, immediately identified himself, stated that the call was in response to a request Plaintiff submitted, and began confirming with Plaintiff the information Efinancial had received. (Dkt. No. 28-1 at 4.) Plaintiff

did not voice any objections when the Efinancial representative identified himself. He also confirmed information with the Efinancial representative, and then proceeded to provide additional information relevant to the internet submission, including detailed information about Plaintiff's medical and criminal history. (*Id.* at 4-7.)

This undisputed evidence supports the conclusion that Efinancial had a reasonable basis to call Plaintiff and that Plaintiff consented to the call.

In response, Plaintiff first asserts that the fact that he engaged in a detailed conversation with the Efinancial representatives should not be used against him because he was investigating and otherwise attempting to identify "all potential liable companies [that] were not identified at the outset of the unlawful call." (Dkt. No. 40 at 2.) However, the personal information he disclosed during the call supports the contention that he in fact was interested in obtaining a quote and otherwise submitted an internet request. It is reasonable to conclude that by sharing such detailed information there was an interest in an insurance quote. Moreover, despite the argument that Plaintiff played along to further investigate, as Judge Tsuchida noted, nowhere in Plaintiff's declaration did he claim he had an investigative motive for divulging detailed personal information during the telephone conversation. (Dkt. No. 39 at 15-16; *see also* Dkt. No. 37 at 2-3.) Thus, no evidence supports the argument that Plaintiff only engaged in the conversation to investigate.

Plaintiff also reiterated that he did not submit the internet request. As support for this conclusion, he noted his declaration specifically denies submitting a request (Dkt. No. 37 at 2-3); identified that he repeatedly stated he did not request an insurance quote during the telephone conversation (after he provided information for an insurance quote) (Dkt. No. 28-1 at 9); asserted he would not have provided an incorrect birthdate and email address if he in fact had submitted

the request (Dkt. No. 37 at 3)[1]; asserted that the IP address associated with the internet submission geo located to California and reflected Google as the internet service provider (*id.* at 2-3); asserted the possibility of overseas hackers being involved (Dkt. No. 40 at 5); and asserted Efinancial (or associated entities) had an incentive to submit fraudulent insurance requests to itself. (*Id.* at 4-5.)

---

[1] Other courts have questioned Plaintiff's actions of posing as a customer of an entity responsible for initiating a telemarketing call. Plaintiff has filed approximately 60 lawsuits under the TCPA, and has developed what one district court characterized as an "extensive and profitable history with lawsuits involving TCPA claims":

> Plaintiff acknowledges that he has developed a "typical practice" of deceitful conduct used to succeed in prosecuting TCPA claims. Plaintiff poses as a customer of the entity responsible for initiating the telemarketing call and induces the representative into believing that he is, in fact, an established customer and genuinely interested in the product or service offer, thereby prolonging the purported injury that Plaintiff claims to have suffered and increasing the potential damages that he could, in theory, recover.

*Johansen v. Bluegrass Vacations Unlimited, Inc.*, No. 20-81076-CIV-SMITH, 2021 WL 4973593 at *1, 5 (S.D. Florida Sept. 30, 2021). The Court in that case denied Plaintiff's motion for class certification, citing Plaintiff's contention that engaging in deception was appropriate behavior for a class representative, and "serious concerns" about Plaintiff's "credibility, honesty, trustworthiness, and motives" in bringing forth the putative class action. (*Id.* at 5-6.)

In another case, Plaintiff admitted that he "posed" as an interested customer when he received a telemarketing call, and called the company back when the initial phone call was disconnected. *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2017 WL 6505959, at *3 (S.D. Ohio Dec. 20, 2017) Plaintiff acknowledged that he had no intention of engaging the company's services, but played along "as he typically does" and "affirmatively took the steps necessary to seemingly enroll" with the company despite knowing that "no matter what happened, he would not receive [the company's] services" because he deliberately provided the company with an incorrect address and an incorrect account number. (*Id.*) The Court found that Plaintiff's admissions "cast serious doubts on his fitness to serve as an adequate class representative" and also "appear[ed] to undermine the viability of his cause of action under the TCPA." (*Id.*) The district court in that case found that Plaintiff's "deceptive conduct gave [the defendant] an objectively reasonable basis for believing that [plaintiff] had established a business relationship with [defendant]." (*Id.* at 4.)

ORDER ADOPTING REPORT AND RECOMMENDATION

However, Judge Tsuchida pointed out that various publicly available websites listed the IP address associated with the life insurance request as being in North Charleston and South Carolina, which "simply underscores the unreliability of IP addresses and provides no meaningful information about who submitted the online form for a life insurance quote." (Dkt. No. 39 at 16-17.) In addition, the assertions that overseas hackers were involved or that Efinancial may have submitted the insurance request to itself is speculative at most, and "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-1082 (9th Cir. 1996).

Moreover, as Judge Tsuchida noted, Efinancial identified that the email address used as part of the internet request was linked to the physical address Plaintiff provided to Efinancial during the April 7, 2020 call and that the name provided in the internet request was potentially associated with Plaintiff's telephone number. (Dkt. No. 38 at 9.)

The Court, therefore, agrees with Judge Tsuchida's conclusion that Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact and that no reasonable jury would find that someone other than Plaintiff requested and consented to being called by Efinancial.

**B.  Even if Plaintiff did not submit the online request, TCPA Safe Harbor Provisions Apply.**

Even assuming a question of fact exists as to whether Plaintiff submitted the internet request, the TCPA safe harbor provisions apply.

The TCPA provides that "[i]t shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). If an entity has violated the

ORDER ADOPTING REPORT AND RECOMMENDATION

TCPA, it can avoid liability if the call was placed in error and that "as part of its routine business practice," it meets various standards, specifically: (1) "written procedures to comply with the national do-not-call rules;" (2) training of personnel on those procedures; (3) maintenance of a list of phone numbers that the entity cannot contact; (4) the use of "a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules;" and (5) the use of "a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database." 47 C.F.R. § 64.1200(c)(2)(i)(A)-(E).

Plaintiff first asserts the TCPA safe harbor provisions are inapplicable because Efinancial did not purchase or access the DNC prior to making the calls, and substantial compliance is insufficient to avail oneself of said provisions. However, as Judge Tsuchida identified, "Substantial compliance with regulatory requirements may suffice when such requirements are procedural and when the essential statutory purposes have been fulfilled." (Dkt. No. 39 at 22-23) (quoting *Shotgun Delivery, Inc. v. United States*, 269 F.3d 969, 973-74 (9th Cir. 2001)).

Here, Efinancial produced significant evidence that as part of its routine business practice, it complies with the standards required by the safe harbor provision and had substantially complied with the purpose of the TCPA, "to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements", by only calling those who have requested a life insurance quote and consented to be called. (Dkt. Nos. 25-1 at 2-4; 25-4 at 2-27; 26 at 1-3; 27 at 1-4; 39 at 21-24); *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017). In other words, Efinancial's internal procedures in fact had

ORDER ADOPTING REPORT AND RECOMMENDATION

prevented calls to Plaintiff except for the call initiated because of the internet request at issue in this case.

Plaintiff also contends Efinancial did not establish it had contacted Plaintiff "in error" because the alleged error was not supported "by evidence showing that otherwise unlawful telephone solicitations were made unintentionally and detailing any procedural backgrounds that led to such calls, as well as the steps that the seller has taken to minimize future errors." (Dkt. No. 40 at 7) (quoting *Dynasty Mortgage, LLC, Notice of Apparent Liability for Forfeiture*, 20 FCC Rcd 4912, 4929 (2005)).  However, as Judge Tsuchida noted, "it is not clear that procedural breakdown is the sine qua non of the safe harbor provision." (Dkt. No. 39 at 19-20) (quoting *Simmons v. Charter Commc'ns., Inc.*, 222 F. Supp. 3d 121, 135 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017)).  Moreover, the plain meaning of the word "error" is "a mistake". (*Id.*) Thus, regardless of whether Plaintiff or a third party actor submitted the internet request, Efinancial "would be understandably mistaken in its belief that Plaintiff had consented to the call." (Dkt. No. 39 at 21.)  In the Court's view, this mistaken belief constitutes an "error" within the purview of the TCPA safe harbor provisions.

In short, even if a question of fact existed as to whether plaintiff requested or consented to the call in question, the TCPA's safe harbor provisions would still apply.

### IV.  ORDER

Having reviewed the Report and Recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge, any objections or responses to that, and the remaining record, the Court finds and ORDERS:

(1) The Court ADOPTS the Report and Recommendation;

(2) Defendant's Motion for Summary Judgment (Dkt. No. 24) is GRANTED;

(3) All other pending motions are STRICKEN as moot;

(4) This case is DISMISSED WITH PREJUDICE; and

(5) The Clerk is directed to send copies of this Order to the parties and to Judge Tsuchida.

Dated this 18th day of January, 2022.

David G. Estudillo
United States District Judge

ORDER ADOPTING REPORT AND RECOMMENDATION